IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TECUMSEH BROWN-EAGLE, )
)
    Plaintiff, )
)
)
    v. )    Civil No. 1:12-cv-314 Erie
)    Judge Maurice B. Cohill
COUNTY OF ERIE, PENNSYLVANIA, )
)
    Defendant. )

## Opinion

Plaintiff Tecumseh Brown-Eagle brings this civil rights employment discrimination action against the County of Erie, Pennsylvania, asserting that he was unlawfully terminated from his job with the Erie County Office of Children and Youth ("OCY") in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq*. Presently before the Court is Defendant's Motion for Summary Judgment to which Plaintiff has timely responded. In addition, Defendant has filed a Reply to Plaintiff's Response. For the reasons stated below, we will grant Defendant's motion and dismiss this action.

I.     **Factual and Procedural Background**

    **A. Factual Background**

Mr. Brown-Eagle is a non-Caucasian, dark-skinned male. On November 15, 2010, he was hired by the Erie County Office of Children and Youth as a probationary employee in the position of Caseworker II. According to Mary Ann Daniels, the Director of OCY during the relevant time period, probationary status employment allows for a six-month period to determine if an employee should be retained for a permanent position. Aff. of Mary Ann Daniels, Feb. 24,

1

2015, ¶ 3, attached as Ex. C to Def. Appendix (ECF No. 46).  Ms. Daniels also explains that a Caseworker II employee works "in the community with the children and families who are involved with the Office of Children and Youth.  Caseworkers also appear in court to testify in child welfare and custody proceedings."  Daniels Aff.  ¶ 3.

There is no dispute that Mr. Brown-Eagle was qualified to perform the job, and that his actual performance during the time he was employed by OCY was satisfactory.  Instead, the precipitating event for OCY's eventual termination of Mr. Brown-Eagle was a conversation he had with a co-worker that, in the opinion of management, revealed that Mr. Brown-Eagle may be subject to attacks on his credibility when testifying in court.

In December 2010, at an event sponsored by OCY, Mr. Brown-Eagle had a conversation with a coworker, Gerard Miller.  Tr. Civil Service Comm., <u>Brown-Eagle v. Erie County Dept. of Human Services</u>, OCY, Apr. 26, 2011, at 73, attached as Ex. E to Def. App. (ECF No. 46).  Mr. Miller testified that Mr. Brown-Eagle said that he had been abducted by aliens or had been inside a UFO.  Tr. Civil Service Comm., at 73; Daniels Aff. ¶ 11; Letter from R. Perhacs to R. Bryant, EEOC, Mar. 6, 2012, ¶ 5, attached as Ex. A to Pl. Brief in Opp. Re Mot. to Dismiss (ECF No. 14).  In addition, Mr. Miller testified that Mr. Brown-Eagle also said that his brother "was able to bypass the security at the Whitehouse and melt through the bars and get into the oval office and take off his clothes and burn them twice."   Tr. Civil Service Comm., at 74.

Mr. Brown-Eagle denies that he had said that he had been abducted by aliens and denies that he said that his brother was in the Oval Office.  He does, however admit that he, along with four other people, did witness an unexplained "light moving in the sky which appeared to quickly move away, out of sight," Aff. of Tecumseh Brown-Eagle, April 9, 2015, ¶ 6 (ECF No. 60).  He further states that the fact that he had sighted an airborne object meeting the Air Force

2

definition of a UFO, makes him "among millions of people who have seen such a sight," which "should not disqualify [him] from employment." Brown-Eagle Aff. ¶ 11, citing Air Force Regulation 200-2. He also explains that he told Mr. Miller that a couple of weeks after the sighting of the unexplained light in the sky, his brother, who also saw the light, "went on to the White House grounds and got arrested and committed," and that his brother had "squeezed through the bars of the fence and went to the back door of the White House . . . ." Brown-Eagle Aff. ¶ 6.

Mr. Miller relayed the substance of his conversation with Mr. Brown-Eagle first to his supervisor, and then to Ms. Daniels. Daniels Aff. ¶ 10-12. Ms. Daniels stated that she was concerned about the information and so "decided to look into it further by searching the Internet," which resulted in her discovering that Mr. Brown-Eagle had spoken at The Burlington Vortex Conference, a conference involving "UFO's and other paranormal activity." Daniels Aff. ¶ 13. Based on this information, Ms. Daniels decided to recommend that Mr. Brown-Eagle be terminated, summarizing her opinion as follows:

> In my judgment, as the Director of the Office of Children and Youth Services, this information about Mr. Brown Eagle could have adversely affected his credibility and that of the Office of Children and Youth Services, with both the children and families that the agency served, as well as in court when testifying. My concerns included that he might come across as someone who was not dealing in reality. I could not trust that he would be effective in performing his job.

Daniels Aff. ¶ 14.

Ms. Daniels conferred with Peter Callan, the County's Director of Personnel, and Richard Perhacs, Esquire, the County's labor solicitor about the information she had learned and her recommendation to terminate Mr. Brown-Eagle. Daniels Aff. ¶ 15. Both agreed that terminating Mr. Brown-Eagle's employment during the probationary period in light of this information was appropriate. Daniels Aff. ¶ 15. Ms. Daniels then terminated Mr. Brown-Eagle's probationary

3

employment by letter dated January 21, 2011. Termination Letter from M. Daniels to T. Brown-Eagle, January 20, 2011 ¶ 1, attached as Ex. B to Def. App. (ECF No. 46). The termination letter did not state the reason for his termination.

**B. Procedural Background**

After contesting his termination with the Pennsylvania Civil Service Commission, Mr. Brown-Eagle filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination on the basis of religion, race, and gender. The EEOC issued Plaintiff a Notice of Right to Sue on or about September 20, 2012 after which Mr. Brown-Eagle filed the present law suit.

Plaintiff filed his Complaint in this Court on December 19, 2012. On March 13, 2013, he filed a First Amended Complaint in response to Defendant's Motion to Dismiss. ECF No. 10. Defendant filed a motion to dismiss the First Amended Complaint, and in response we permitted Plaintiff to file a Second Amended Complaint on April 24, 2013. ECF No. 17. Plaintiff's Second Amended Complaint asserted claims of discrimination based on his gender, religion, national origin, and color. Defendant filed a motion to dismiss the Second Amended Complaint and on October 30, 2013, we issued an Opinion dismissing Mr. Brown-Eagle's claims of discrimination based on gender, religion, and national origin, but permitted his claim of discrimination based on color to proceed. Opinion, Oct 30, 2013, ECF No. 22.

This case has not been diligently pursued on either side. Fact Discovery in this case closed on November 19, 2014, and it appears that no depositions were taken at all. The parties were to contact the Court within fourteen days of the close of discovery, or no later than December 3, 2014, in order to schedule a post-discovery conference, but neither party did. Therefore, on February 3, 2015, we ordered the parties to show cause why this action should not

4

be dismissed. Plaintiff responded to the order to show cause by stating that he was ready to go to trial and he filed his pretrial statement. Defendant indicated in its Response that the action was ripe for dismissal as a matter of law, and thereafter filed the instant motion for summary judgment.

II. **STANDARD OF REVIEW**

Summary judgment is appropriate only if "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. Rule Civ. Proc. 56(a). "In making that determination, a court must view the evidence 'in the light most favorable to the opposing party.'" Tolan v. Cotton, 134 S.Ct. 1861, 1866 (2014), *quoting* Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); and *citing* Anderson v. Liberty Lobby Inc., 477 U.S. 242, 255 (1986). A "'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Tolan, at 1866, *quoting* Anderson, at 249.

Once the party moving for summary judgment has satisfied its initial burden of production on the motion, then the burden shifts to the party opposing the motion. The party must set forth specific facts to show that there is a genuine issue for trial. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," and has an affirmative duty to produce evidence demonstrating the existence of a factual dispute. Matsushita Elec. Indus. Co v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The court must evaluate the entire setting of the case, including the record and all materials submitted in accordance with the motion for summary judgment; whether it is clear that a trial is unnecessary; and whether there is any doubt as to the existence of a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324-25 (1986).

## III. **DISCUSSION**

The County of Erie seeks summary judgment on Mr. Brown-Eagle's sole remaining claim that he was unlawfully terminated on the basis of his color. Defendant argues that Mr. Brown-Eagle cannot establish a prime facie case of color discrimination and, even if he could, that he cannot rebut OCY's legitimate non-discriminatory reason for terminating Plaintiff's probationary employment. Defendant claims that Mr. Brown-Eagle was terminated because he lacks the necessary credibility to be a caseworker for OCY given the frequency with which caseworkers must testify in court on behalf of those whom they serve. Mr. Brown-Eagle claims that this reason is merely a pretext for unlawfully terminating him based on the color of his skin and that he is a well-respected and credible member of the Erie community. Because Mr. Brown-Eagle is unable to show that he was replaced by someone not in the protected class or under circumstances that give rise to an inference of unlawful discrimination, and has no evidence to otherwise demonstrate that his termination was based on his color we will grant Defendant's motion.

**A. Employment Discrimination**

When dealing with employment discrimination, the familiar burden shifting framework of the McDonnell Douglas analysis requires:

> [F]irst, that the plaintiff establish a prima facie case of employment discrimination; second, that the employer proffer a nondiscriminatory reason for its adverse employment action; and third, that the plaintiff must then show that the employer's proffered explanations were pretextual."

Williams v. Shenango, Inc., 986. F. Supp. 309, 318 (W.D. Pa. 1997) *citing* McDonnell Douglass Corp. v. Green, 411 U.S. 792 (1973); *see also* Goosby v. Johnson & Johnson Medical, Inc., 228 F.3d 313 (3d Cir. 2000).

To establish a prime facie case of employment discrimination based on color, Mr. Brown-Eagle must show that (1) that he is a member of a protected class; (2) that he is qualified for the position; (3) that he was terminated from his position; and (4) that he was replaced by someone not in the protected class or "under circumstances that give rise to an inference of unlawful discrimination." Jones v. School District of Phila., 198 F.3d 403, 410 (3d Cir. 1999).

Once a plaintiff sets forth a prima facie case of employment discrimination, the defendant has a relatively light burden of coming forward with a legitimate, non-discriminatory reason for the adverse employment decision. Goosby, 228 F.3d at 319. "If the employer articulates such a reason, the plaintiff then has 'an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant [*i.e.*, the employer] were not its true reasons, but were a pretext for discrimination.'" Young v. UPS, 135 S. Ct. 1338, 1345 (2015), quoting Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)..

**B. Plaintiff's Prima Facie Case**

Defendant argues that Plaintiff's color discrimination claim fails because Mr. Brown-Eagle cannot establish a prima facie case. Specifically, Defendant argues that Mr. Brown-Eagle is unable to establish that he was terminated under circumstances that give rise to an inference of unlawful discrimination. Mr. Brown-Eagle argues that he has sufficiently established an inference of discrimination by showing that multiple dark-skinned employees were fired (just as he was), while Michael Vicander, a white male, remains employed by OCY.

Defendant counters Mr. Brown-Eagle's argument by showing that two other persons of color were hired for the Caseworker II position within one year of Mr. Brown-Eagle: Cyreta Barnes and Mondoa Monono. Def. Stmt. Undisputed Facts ¶ 18, ECF No. 47. Mr. Monono was

7

terminated for cause during his probationary status "due to work performance issues including absences from work and, most immediately, the disclosure of a recent arrest and incarceration for non-payment of child support, which made him an inappropriate candidate for permanent employment." Def. Stmt. Undisputed Facts ¶ 20. Cyreta Barnes remains employed by OCY. Def. Stmt. Undisputed Facts ¶ 19. As for Mr. Vicander, the white male, Defendant notes that he has performed his job satisfactorily, and there was no reason to terminate him. Supp. Aff. of Mary Ann Daniels, April 24, 2015, ¶ 2, attached as Ex. M to Def. Reply (ECF No. 59).

Mr. Brown-Eagle either concedes the truth of the above statements or else offers no evidence to show that the above statements are not true. At best, Mr. Brown-Eagle argues that he was treated differently from Mr. Monono in that Mr. Monono was notified of the reason he was being fired in his termination letter, while Mr. Brown-Eagle was not. Mr. Brown-Eagle is thus left with relying solely on his own assertion that he was fired based on his color to support his prima facie case. The fact that OCY still employs a person of color and has presented a valid reason for terminating another person of color is sufficient to negate an inference of unlawful discrimination. We agree with Defendant that Mr. Brown-Eagle has not established that he was terminated under circumstances that give rise to an inference of discrimination and thus cannot set forth a prima facie case of employment discrimination.

### C. Defendant's Legitimate Non-Discriminatory Reason

Even assuming that Mr. Brown-Eagle was able to set forth a prima facie case of employment discrimination, we find that he is unable to rebut Defendant's legitimate non-discriminatory reason for Plaintiff's termination. Once a prima facie case is established, the employer must "articulate some legitimate, non-discriminatory reason for" its action. Young, 135 S. Ct. at 1345.

As noted, Defendant's proffered reason for terminating Mr. Brown-Eagle's employment was out of concern that his credibility as a witness in court may be challenged. OCY arrived at this decision after they learned of his statements regarding UFOs and his brother being arrested on White House grounds, as well as related information about him from the Internet, and in light of the fact that an important part of the Caseworker II position is testifying in court where credibility is crucial. We find this to be a legitimate nondiscriminatory reason for terminating Mr. Brown-Eagle.

The burden thus shifts to Mr. Brown-Eagle to show that OCY's reason for terminating him was a pretext for unlawful discrimination based on color. Young, 135 S. Ct. at 1345. To accomplish this Mr. Brown-Eagle may point "'to some evidence, direct or circumstantial, from which a factfinder would reasonably either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'" Jones, 198 F.3d at 413, quoting Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994) and Sheridan v. E.I. DuPont de Nemours and Co., 100 F.3d 1061, 1067 (3d Cir. 1996) (*en banc*), cert. denied, 521 U.S. 1129 (1997). It is not enough to show that that the "employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent." Jones, 198 F.3d at 413.

Mr. Brown-Eagle argues in part that his termination was a pretext for color discrimination because OCY employees did not fully and sufficiently investigate after being told by Mr. Miler about his conversation with Mr. Brown-Eagle. He focuses on the discrepancies between his version of the conversation and Mr. Miller's version, but he does not deny that he told Mr. Miller about seeing an unidentified object in the sky or about his brother being on the

premises of the White House.  It does not matter that there are variations in the stories, it only matters that the basic facts are not disputed:  Mr. Brown-Eagle had a conversation about an encounter with an unidentified flying object.  This is sufficient to support Defendant's reason for firing Mr. Brown-Eagle out of concern that his credibility may be affected while testifying on behalf of OCY as a legitimate reason and not a pretext for unlawful discrimination.

Mr. Brown-Eagle also claims that he is a reputable member of his community and that a jury would find him credible as he would be able to respond to any questions attacking his credibility.  Again, it does not matter that Mr. Brown-Eagle may be found credible when testifying in court and when confronted with his past statements regarding an encounter with a UFO.  OCY made a business decision that chose not to take the risk that the credibility of one of its caseworkers would be challenged in court based on such information.  Whether this decision was wise, shrewd, prudent or competent is not for this court to decide.  Jones, 198 F.3d at 413.

Significantly, Mr. Brown-Eagle has not introduced any evidence to support a factfinder reasonably disbelieving OCY's reason for firing him, or to support a factfinder believing that an invidious discriminatory reason was more likely than not a motivating cause of his termination. We must remark again that there were no depositions taken in this case, which may or may not have helped Mr. Brown-Eagle's argument.  OCY reasonably decided that the credibility of its caseworkers is sufficiently important that it chose to terminate Mr. Brown-Eagle based on the information Ms. Daniels learned after Mr. Miller's conversation with Mr. Brown-Eagle.  We find that Mr. Brown-Eagle is unable to rebut Defendant's legitimate nondiscriminatory reason for terminating his probationary employment or show that it was a pretext for unlawful discrimination.

## IV. Conclusion

Our review of the record shows that there is no genuine issue of material fact as to whether OCY discriminated against Mr. Brown-Eagle based on the color of his skin. Mr. Brown-Eagle is unable to establish a prima facie case of employment discrimination and, even if he could, OCY had a legitimate, non-discriminatory reason for terminating him. Accordingly, we will grant Defendant's Motion for Summary Judgment and dismiss the Complaint.

An appropriate Order will be entered.

July 22, 2015
Date

Maurice B. Cohill, Jr.
Maurice B. Cohill Jr.
Senior United States District Court Judge